**Sealed**

Public and unofficial staff access
to this instrument are
prohibited by court order.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

United States Courts
Southern District of Texas
FILED

SEP 0 1 2005

Michael N. Milby, Clerk of Court

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | Crim. No. H-04-25 (Lake, J.) |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| RICHARD A. CAUSEY, JEFFREY K. ) | |
| SKILLING, and KENNETH L. LAY, ) | |
| ) | |
| Defendants. ) | |

## DECLARATION OF MICHAEL RAMSEY IN SUPPORT OF
## DEFENDANTS' JOINT MOTION TO DISMISS, OR OTHER ALTERNATIVE RELIEF,
## BASED ON PROSECUTORIAL MISCONDUCT

## TO BE FILED *IN CAMERA* AND UNDER SEAL

446

## DECLARATION OF MICHAEL RAMSEY

1. I, together with others, represent Mr. Kenneth Lay in the above-entitled action. I have over 40 years experience as a criminal lawyer.

2. I submit this declaration in support of Defendants' Joint Motion to Dismiss, or Other Alternative Relief, Based on Prosecutorial Misconduct.

3. I have personal knowledge of the facts set forth herein.

4. I have spoken with several attorneys representing individuals who are either the target of Enron-related prosecutions or potential witnesses in those cases. I have personal and professional friendships with many of these lawyers. Despite my relationships with these counsel, and despite the professed good feelings their clients have toward Mr. Lay, virtually no one will agree to an interview or, more importantly, agree to testify in open court on Mr. Lay's behalf. I have tried scores of criminal cases, involving crimes both notorious and minor. I have never encountered the witness access problem we face here; indeed, no case even comes close.

5. The reason counsel cite for not assisting Mr. Lay is almost always the same. The Enron Task Force has sent a message to witnesses and their counsel that it keeps score which witnesses assist defendants and which do not; those who do, do so at their peril. Individuals deemed "witnesses" fear having their status changed to "target" for helping the defense; "targets" fear being indicted if they testify on defendants' behalf; and those who have pled guilty and are cooperators fear re-indictment or unfavorable sentencing recommendations if they lend any support.

6. Because lawyers are worried for their clients about reprisals from the Task Force, very few will go on the record and help document this abuse.

7. In recent months, I have interviewed, a lawyer, Mr. Wendell Odom, who has authorized me to discuss he and his client's plight, but only if I do so in a way that will not disclose his involvement to the Enron Task Force; hence, this filing *in camera* and *ex parte*.

8. I have known lawyer Odom for over 20 years and am aware of his personal and professional reputation.  To my personal knowledge and based upon his standing in the legal community, he is truthful, highly competent, and sophisticated in handling complex federal criminal trials and litigation.  Without hesitation, I would consult him for advice in such matters.

9. He presently represents Michael Andersen, a person who is viewed by both the Enron Task Force and the defense as an important, material witness relative to the instant indictment. Mr. Anderson worked at the company Azurix and has knowledge of issues related to the goodwill impairment charges alleged in paragraph 83 of the indictment.  Based on our review of the record, we believe Mr. Anderson could give exculpatory testimony for Mr. Lay vis-à-vis these charges.  The Task Force has listed Mr. Anderson as one of 117 co-conspirators.

10. Lawyer Odom and Mr. Anderson attended a "debriefing" at 515 Rusk Avenue, Houston, Texas on or about July 1, 2004.  Also in attendance were John Hemann and Paula Schanzle of the Enron Task Force, among others.  Lawyer Odom relates to me that it was a lengthy and somewhat contentious debriefing during which members of the Enron Task Force "did not like what they were hearing."  (Prior to debriefing, lawyer Odom's client had been declared a "subject" of the grand jury investigation.)

11. Near the end of the session, Enron Task Force member Schanlze asked whether the subject/client had been talking to lawyers for Messrs. Skilling and Lay. An answer was given, "No. But it is not because they are not wanting to," to which Enron Task Force member Schanlze stated, "You don't want to talk to those guys. They are bad," or "They are bad news." The statement was not taken in jest, nor in the opinion of lawyer Odom, was it so meant.

12. Because of threats like these, Mr. Lay and his counsel have been unable, to date, to gain significant access to witnesses, develop evidence from various witnesses who obviously possess it, or secure agreements from important witnesses to testify on Mr. Lay's behalf. These impenetrable roadblocks, which the Enron Task Force through its deeds and words such as those above have laid down in our path, greatly prejudice Mr. Lay's ability to prepare for trial and present a defense once trial begins.

        I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed at Houston, Texas on August 30, 2005

                                        Michael Ramsey