## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | § | |
| | § | |
| **v.** | § | **CRIMINAL NO. 4:04-cr-00025** |
| | § | |
| **RICHARD A. CAUSEY,** | § | |
| **JEFFREY K. SKILLING, &** | § | |
| **KENNETH L. LAY,** | § | |
| | § | |
| **DEFENDANTS** | § | |

## GOVERNMENT'S RESPONSE TO APPLICATION
## FOR PUBLIC ACCESS TO SEALED MATERIALS

The United States, by and through its attorney, the Acting Chief of the Fraud

Section of the Criminal Division of the United States Department of Justice, hereby

respectfully submits this response to the Application for Public Access to Certain

Sealed and/or Redacted Court Records.  As set forth more fully below, because

certain of these documents were publicly filed in related court proceedings, counsel

for the Applicant Margot Cleveland has agreed to withdraw the request for access to

those materials.  As to the remaining documents requested by the Applicant, the

Government has reviewed the sealed filings and, in light of the fact that the issues

discussed therein have been made a part of the public record in this and related

proceedings, the Government agrees that these additional materials can be unsealed

in this case, subject to certain limited redactions in order to protect material covered

by Federal Rule of Criminal Procedure 6(e).  Should the Court agree with the

Government's position, the Government will promptly make the necessary redactions and provide the Court with redacted copies to be made available on the public docket.

## INTRODUCTION

On November 8, 2018, freelance journalist Margot Cleveland ("Applicant"), filed an Application for Public Access to Certain Sealed and/or Redacted Court Records ("the Application") with the Clerk's office of the United States District Court for the Southern District of Texas. *See* Dkt. 1352, 1353. Although the Application was styled as a miscellaneous action, it was directed to this Court and electronically filed on the docket in the above-captioned case because the sealed and redacted documents identified in the Application relate to this closed criminal prosecution.

In order to allow the Government to adequately respond to the Application, on November 23, 2018, the Government filed a motion with the Court seeking access to the sealed and unredacted documents identified in the Application, as well as access to certain additional sealed documents filed in the above-captioned case which appear to pertain to the same subject matter as the sealed documents sought by the Applicant. *See* Dkt. 1356. On December 12, 2018, this Court granted the Government's motion for access in part, allowing the Government access to all but one of the documents requested, Docket Entry 441. *See* Dkt. 1361.

Following its receipt of the documents from this Court[1], the Government has conducted its own review of the documents and related exhibits and has conferred with counsel for the Applicant, as well as counsel for the parties who initially requested that the materials at issue be filed under seal, including counsel for the three original criminal defendants in this prosecution, as well as counsel for four third-party movants who intervened in this case in connection with the motion and evidentiary hearing related to the sealed filings.  The Government now files this response.

## FACTUAL BACKGROUND[2]

The Application requests access to certain sealed pleadings filed within a discrete time frame during the pretrial proceedings in this case.  As explained in greater detail below, those pleadings relate to allegations made by the defendants that the Government committed misconduct by interfering with their ability to prepare a defense.

As the Court is aware, Defendants Causey, Skilling, and Lay were indicted by a grand jury sitting in the Southern District of Texas on multiple charges in

---

[1] The Government wishes to express its appreciation to this Court's Case Manager for his assistance in identifying and locating the documents at issue and providing those documents to the Government.

[2] The facts set forth in this section have all been extensively discussed in the publicly-available briefs filed in Defendant Skilling's appeal, as well as in the Fifth Circuit's first opinion in this case. *See United States v. Skilling*, 554 F.3d 529 (5th Cir. 2009), *aff'd in part, vacated in part and remanded*, 561 U.S. 358 (2010).

connection with a scheme to deceive Enron Corporation's shareholders, employees, and the investing public about Enron's financial condition and performance.  As part of the pretrial proceedings in this case, on May 27, 2005, at the request of Defendant Skilling, Dkt. 345, this Court issued an order stating as follows: "Should a witness decide to provide information or assistance to the defense, the government will not view the witness's decision to cooperate with defense counsel as any lack of cooperation with the government, and the government will not use such cooperation as a basis for decisions regarding prosecution." Dkt. 351.  The defendants then sent this order to 138 potential witnesses with a request that the witnesses meet with defense counsel.  On September 1, 2005, the defendants moved to dismiss the indictment, alleging, among other things, that the Government had improperly interfered with their access to witnesses.  Dkt. 440, 456.  Among other allegations, the defendants asserted that Andrew Weissmann, then-director of the Enron Task Force, committed misconduct by sending an email to William D. Dolan, III, an attorney for government witness Ken Rice, informing Dolan that another of Rice's attorneys, Dan Cogdell, was communicating with Skilling's attorneys.  In the email, Weissman suggested that if Cogdell was acting against Rice's interest, Rice should "get[ ] rid of him."  Dkt. 440 at 10-11.

In support of the motion, the defendants filed sealed declarations from five of their own attorneys repeating allegations from third parties that Government

attorneys and investigators had discouraged witnesses from cooperating with defendants or interfered with their access to witnesses.  On September 6, 2005, the Government filed a motion to unseal those declarations.  Dkt. 459.  The Government first noted that it did not appear that the Court had granted a motion by the defendants to keep the declarations under seal.  *Id*. at 1 n.1.  The Government then argued that allowing the declarations to remain under seal "would be misleading to the public and prejudicial to the government" because it would allow the defendants "to publicize their inflammatory motion while permitting them to shield their 'evidentiary support' from scrutiny."  *Id*. at 3.  The Government asked that the Court unseal the declarations and stated that "[t]he government [had] made limited redactions to the[] affidavits, which [were] submitted separately to the Court and defense counsel."  *Id*. at 3 n.3  Although the record does not reflect that the Court ruled upon the Government's motion to unseal or ordered that the declarations be filed with the Government's proposed redactions, redacted versions of the defendants' joint motion and the accompanying declaration of defense expert witness Michael Tigar were filed on the public docket.  Dkt. 456 and 457.

In an effort to avoid "satellite litigation" over the allegations in the defendants' motion, this Court proposed a procedure to ensure that potential witnesses made the decision whether to cooperate with defendants without any fear of retaliation by the Government.  Accordingly, on September 14, 2005, this Court sent letters to 38

persons who, the defendants alleged, refused to speak with defense counsel because of fear of Government retaliation or had failed to respond to prior requests from defense counsel. The letters informed potential witnesses that (1) witnesses do not need the Government's consent to meet with defense counsel and need not inform the Government of any meeting with defense counsel; (2) to the extent that Government consent is required by a potential witness's plea agreement, the Government has given its consent; (3) witnesses are free to discuss whatever they wish with defense counsel, regardless of any agreement with the Government and without fear of government retaliation; and (4) witnesses are free to testify on defendant's behalf at trial. In the letter, the Court offered to meet with any potential witness "to address any concerns about speaking to defense counsel." The Court also attached its May 27, 2005 Order to the letter, and it directed each potential witness personally to inform the Court in writing whether he or she wished to meet with defense counsel. In response, no recipient asked to discuss the matter with the Court, and only one of the 38 witnesses informed the court that he would meet with defense counsel.

After this Court had received the potential witnesses' responses, the Government filed its opposition to the defendants' motion to dismiss. Dkt. 491, 493. As the defendants had done, the Government filed one copy of the response under seal, and a second copy on the public docket with certain information redacted. The

Government's response disputed the defendants' allegations that the Government had interfered with potential witnesses. The Government submitted declarations or letters from several individuals alleged to have been targets of government interference; in those declarations and letters attorneys for the potential witnesses denied that they had made the statements that defendants attributed to them. The declarations in support of the Government's opposition were filed under seal as attachments to the unredacted version of the Government's response.

On November 18, 2005, the Court ruled that the defendants' motion raised an issue of fact with regard to only two of its allegations: (1) that Wendell Odom, an attorney for former Enron employee Michael Andersen, told Lay's counsel that an FBI agent told Anderson and Odom, "You don't want to talk to [the attorneys for Skilling and Lay]. They are bad news." (2) that Robert Sussman, an attorney who represented three potential witnesses, "responded orally" to an unidentified member of the defense team "that he might field questions from the defense, but he would not let his clients meet with [defense counsel] for fear the Enron Task Force will ask if they met with us."

On December 1, 2005, the court held a hearing at which Odom and Sussman testified. Sussman testified that no Enron Task Force prosecutor ever explicitly or implicitly told him that he should not meet with defense counsel and that the Government had never done or said anything to lead him to conclude that he could

not meet with defense counsel or share information concerning the case. Dkt. 591 at 23. Sussman noted that in 31 years as a defense lawyer, he had "rarely" allowed a cooperating witness to meet with defense counsel and that while representing cooperating witnesses he did not share information he received from the Government with defendants. *Id*. at 25-27. Sussman also stated, "I talked to my clients and I knew . . . that they didn't want to talk to defense counsel," and that the advice he had given his three clients in this case was no different than the advice he had given the 150 to 200 other cooperators he had represented. *Id*. at 34, 36. Odom, who had represented four clients in the Enron investigation, testified that during a meeting between one of his clients and the government, an FBI agent said "something to the effect of, 'Those are bad guys' or 'you want to stay away from those guys,'" but that Odom did not know if the agent was referring to the defendants or the defendants' lawyers. *Id*. at 43.[3] The Court heard the remainder of Odom's testimony during a sealed bench conference.

After hearing the attorneys' testimony, the Court found that defendants had not shown by a preponderance of the evidence that the Government had substantially interfered with defense counsel's ability to interview the attorneys' clients. *Id*. at 39, 49. The Court subsequently issued a written opinion denying defendants' motion

---

[3] The agent submitted a declaration in support of the Government's opposition to defendants' motion to dismiss denying that she had made that comment. Dkt. 491, Ex. 15.

to dismiss.  Dkt. 628.  The Court noted that defendants' claims that the Government pressured witnesses not to talk to defendants' attorneys relied "primarily on affidavits from their own attorneys about conversations they had with counsel for a number of potential witnesses."  *Id*. at 2-3.  After considering "all of the evidence," the court denied the motion for two reasons.  *Id*. at 4.  First, the Court concluded that "there is no credible evidence to support defendants' allegations that the government has substantially interfered with witnesses' decisions not to meet with defense counsel."  *Id*. at 4.  Second, the Court held, "to the extent any of the attorneys for potential witnesses had concerns about government retribution if their clients discussed the case with defense counsel, the court has sought to address those concerns" through its order of May 27, 2005, and the letter it sent to 38 potential witnesses on September 14, 2005.  *Id*. at 4-5.

The case proceeded to trial.[4]  On May 25, 2006, after 60 days of trial, the jury found Defendant Skilling guilty of one count of conspiracy, 12 counts of securities fraud, five counts of making false statements in management representation letters to auditors, and one count of insider trading.  The jury acquitted Defendant Skilling

---

[4] On December 28, 2005, subsequent to this Court's denial of the motion to dismiss for prosecutorial misconduct, but prior to trial, Defendant Causey pleaded guilty to one count of securities fraud pursuant to a plea agreement and was sentenced to 66 months' imprisonment.  DE 603, 604, 1181.  He was released from custody on October 14, 2011.

on nine counts of insider trading. Dkt. 1016.  The jury also convicted Defendant Lay on all counts against him.[5]

Defendant Skilling appealed his conviction to the Fifth Circuit.  Although Defendant Skilling raised a number of arguments on appeal, including that the Government's prosecution rested on "an invalid theory of 'honest-services fraud,'" *Skilling*, 554 F.3d at 542, relevant here, Skilling renewed his prosecutorial misconduct claim, arguing that the Government "violated his Sixth Amendment right to present witnesses on his behalf and infringed on his Fifth Amendment right to be free from governmental interference when preparing his defense." *Id*. at 565. The Fifth Circuit rejected these claims, concluded that this Court did not clearly err when it found that Defendant Skilling had "not demonstrate[d] substantial interference with any witness's choice to testify" and held that the Court's letter to the potential witnesses mitigated any possible prejudice.  *Id*.  Specifically with respect to the claims addressed at the evidentiary hearing, the Fifth Circuit affirmed this Court's conclusion that the Government "had not substantially interfered with Skilling's ability to interview" either Sussman's or Odom's clients.  *Id*. at 569.

The Fifth Circuit also rejected Defendant Skilling's claim that Weissmann committed misconduct by sending the email to counsel for witness Rice.  *Id.* at 572.

---

[5] On July 5, 2006, Defendant Lay passed away while awaiting sentencing.  On October 17, 2006, this Court granted the motion of Mr. Lay's estate and vacated his conviction and dismissed the indictment. DE 1126.

The Fifth Circuit explained that the Government had argued that Weissmann had "sent the email because of a potential conflict of interest between Cogdell and Rice, given that Cogdell represented a number of Enron-related defendants with arguably divergent interests." *Id.* In addition, the Fifth Circuit noted that another of Rice's attorneys filed a declaration with the district court stating that the email played no part in Rice's decision not to meet with Skilling. *Id.* The court of appeals held that, in light of the attorney's declaration, it could not conclude "that the email was an improper threat" and "[e]ven if it was in fact a threat, it was sufficiently ambiguous that we cannot say confidently that its real purpose was intimidation as opposed to something more benign." *Id.* In sum, with respect to Defendant Skilling's allegations of prosecutorial misconduct, the Fifth Circuit concluded that this Court "did not clearly err in finding that Skilling failed to show that any governmental misconduct interfered substantially with his ability to communicate with potential witnesses or otherwise to present his defense." *Id.* at 574.

Defendant Skilling sought certiorari review with the Supreme Court as to the scope of the federal "honest services" fraud statute, 18 U.S.C. § 1346, and the question of whether pretrial publicity and community prejudice prevented him from obtaining a fair trial. *See Skilling v. United States*, 561 U.S. 358, 367 (2010). He did not seek review of the Fifth Circuit's decision on the prosecutorial misconduct issue. The Supreme Court granted certiorari and affirmed the Fifth Circuit as to the

11

pretrial publicity issue, but reversed as to the honest services issue, concluding that § 1346 covers only bribery and kickback schemes. *Id*. at 368. Following remand from the Fifth Circuit, the Government and Defendant Skilling entered into a sentencing agreement, Dkt. 1316, which this Court accepted at Defendant Skilling's resentencing on June 21, 2013, when it sentenced Defendant Skilling to a total of 168 months' imprisonment. According to the Bureau of Prisons, Defendant Skilling has an anticipated release date of February 21, 2019.

## LEGAL STANDARD

As the Applicant correctly observes, "[c]ourts have recognized that the public has a common law right to inspect and copy judicial records" *SEC v. Van Waeyenberghe*, 990 F.2d 845, 848 (5th Cir. 1993); *see generally Nixon v. Warner Commc'ns, Inc*., 435 U.S. 589, 597-99 (1978). This right, however, is not absolute, *id*., and a district court's "discretion to seal the record of judicial proceedings is to be exercised charily," *Fed. Sav. & Loan Ins. Corp. v. Blain*, 808 F.2d 395, 399 (5th Cir. 1987). "In exercising its discretion to seal judicial records, [a] court must balance the public's common law right of access against the interests favoring nondisclosure." *Van Waeyenberghe*, 990 F.2d at 848.

One such countervailing interest weighing against unfettered access to judicial records is "the importance of the secrecy requirements imposed upon grand jury proceedings." *In re Grand Jury Investigation*, 610 F.2d 202, 213 (5th Cir. 1980). It

is well settled that "there is no First Amendment right of access to grand jury proceedings." *In re Motions of Dow Jones & Co.*, 142 F.3d 496, 499-500 (D.C. Cir. 1998) ("The press is not entitled, by the Constitution or by rule, to information about 'matters occurring before the grand jury.'").  Indeed, "[u]nlike typical judicial proceedings, grand jury proceedings and related matters operate under a strong presumption of secrecy." *In re Sealed Case*, 199 F.3d 522, 526 (D.C. Cir. 2000).

Federal Rule of Criminal Procedure 6(e) prohibits the disclosure of any information that would reveal "matters occurring before the grand jury or grand-jury matters." FED. R. CRIM. P. 6(e).  Although the rule does not cover all information developed during the course of a grand jury investigation, courts have recognized that the term "matters occurring before the grand jury" encompasses information that would tend to reveal "what transpired before the grand jury," *In re Grand Jury Investigation*, 610 F.2d at 216, the strategy or direction of the investigation, *see, e.g.*, *In re Grand Jury Subpoena, Judith Miller*, 438 F.3d 1138, 1140 (D.C. Cir. 2006), or the nature of the evidence produced to the grand jury, *United States v. Stanford*, 589 F.2d 285, 291 n.6 (7th Cir. 1978).  It is well established that the identities of targets of a grand jury's investigation are "matters occurring before a grand jury" and subject to Rule 6(e)'s secrecy requirement. *See, e.g.*, *United States v. Procter & Gamble Co.*, 356 U.S. 677, 681-82 (1958); *In re Grand Jury Investigation*, 610 F.2d at 213; *see also Douglas Oil Co. v. Petrol Stops NW*, 441 U.S. 211, 218 n.8 (1979)

("One of the several interests promoted by grand jury secrecy is the protection of the innocent accused from disclosure of the accusations made against him before the grand jury."); *United States v. Eisenberg*, 711 F.2d 959, 961 (11th Cir. 1983) ("[S]ecrecy prevents disclosures to persons who may be interested in the investigation if the facts are known or might attempt to escape if they have reason to believe certain indictments will issue."). The same is true with respect to the identity of subjects of the grand jury. *See Impounded*, 277 F.3d 407, 411 (3d Cir. 2002) ("Among the interests protected by grand jury secrecy is the privacy interest of an investigation's subjects."). Thus, to the extent a court filing, such as a brief, identifies a subject or target of the grand jury's investigation, or other matters "occurring before the grand jury," Rule 6(e)'s secrecy provisions are implicated and sealing may be appropriate to prevent public disclosure. *See Standley v. Dep't of Justice*, 835 F.2d 216, 218 (9th Cir. 1987) ("Secrecy concerning matters occurring before the grand jury extends . . . file memoranda summarizing grand jury testimony.").[6]

The grand jury secrecy rule, however, "does not apply to documents which are already a part of the public record." *United States v. Sutton*, 795 F.2d 1040, 1050 (Temp. Emer. Ct. App. 1986); *see also Sisk v. Comm'r*, 791 F.2d 58, 60 (6th Cir.

---

[6] The Supreme Court had held that the interest in grand jury secrecy continues even after the grand jury is dissolved. *See Douglas Oil*, 441 U.S. at 222 ("[T]he interests in grand jury secrecy, although reduced, are not eliminated merely because the grand jury has ended its activities.").

1986) ("Evidence presented at a criminal trial is not protected by the guarantees of secrecy surrounding a grand jury investigation, but are matters of public record."). As one court of appeals has recognized, once grand jury information is "announced to the world," it loses "its secret characteristic, an aspect that [cannot] be restored by the issuance of an injunction." *In re Charlotte Observer*, 921 F.2d 47, 50 (4th Cir. 1990) (reasoning that once disclosure of information was made in open court, 'the cat [was] out of the bag'"); *see also Virginia Dep't of State Police v. Washington Post*, 386 F.3d 567, 579 (4th Cir. 2004) (interest in protecting integrity of ongoing investigation did not overcome right of access when "information ha[d] already become a matter of public knowledge").

In addition to concerns of grand jury secrecy, courts have held that the right of access must also be balanced against "[t]he privacy interests of innocent third parties." *United States v. Amodeo*, 71 F.3d 1044, 1050 (2d Cir. 1995); *see also Warner Commc'ns*, 435 U.S. at 598 (noting that "the common-law right of inspection has bowed before the power of a court to insure that its records are not 'used to gratify private spite or promote public scandal'" and that "courts have refused to permit their files to serve as reservoirs of libelous statements for press consumption").  "Thus, whether [a party's] right of access is grounded on the First Amendment right of access to judicial proceedings or on the common law right of access to judicial documents, privacy rights may outweigh the public's interest in

15

disclosure." *United States v. Smith*, 776 F.2d 1104, 1113-15 (3d Cir. 1985) (upholding a district court's decision to seal the identities of parties named in a bill of particulars and denying public access to the list).

In a criminal proceeding, such privacy concerns often come into play in the context of identifying unindicted co-conspirators. Although the Fifth Circuit has "never recognized a general right not to be implicated as a possible coconspirator in another's criminal case," *United States v. Holy Land Found. For Relief & Dev.*, 624 F.3d 685, 691 (5th Cir. 2010), it has held that a grand jury "exceed[s] its power and authority" by "accus[ing] a named private person of crime by means of an indictment which does not make him a defendant." *United States v. Briggs*, 514 F.2d 794, 796 (5th Cir. 1975); *see also In re Smith*, 656 F.2d 1101, 1106 (5th Cir. Unit A 1981). It is for these reasons that the Department of Justice's Justice Manual counsels that "[i]n the absence of some significant justification, federal prosecutors generally should not identify unindicted co-conspirators in conspiracy indictments." U.S. DEP'T OF JUSTICE, JUSTICE MANUAL § 9-11.130 (2018). A separate provision of the Justice Manual similarly provides as follows:

> In all public filings and proceedings, federal prosecutors should remain sensitive to the privacy and reputation interests of uncharged third-parties. In the context of public plea and sentencing proceedings, this means that, in the absence of some significant justification, it is not appropriate to identify (either by name or unnecessarily-specific description), or cause a defendant to identify, a third-party wrongdoer unless that party has been officially charged with the misconduct at issue. . . . With respect to bills of particulars that identify unindicted co-

16

> conspirators, prosecutors generally should seek leave to file such documents under seal.

*Id.* § 9-27.760 (2018); *see also Holy Land*, 624 F.3d at 691 (holding that the Government erred by not filing a list of "Unindicted Co-Conspirators and/or Joint Venturers" under seal because the list was simply an "untested allegation of the Government, made in anticipation of a possible evidentiary dispute that never came to pass").

However, just as is the case with respect to grand jury information, once an individual's status as an unindicted co-conspirator becomes a matter of public record, either through testimony at trial or otherwise, the privacy concerns discussed above are diminished. *See, e.g.*, *United States v. Loughner*, 769 F. Supp. 2d 1188, 1196 (D. Ariz. 2011) ("With the bulk of the information already in the public domain, and no legitimate risk to privacy or reputation at stake, unsealing the warrants now is unlikely to cause irreparable harm to anyone."). Thus, in such cases, when an individual's status as a co-conspirator has become publicly disclosed, sealing may no longer be appropriate.

In *Douglas Oil*, the Supreme Court outlined the process whereby a court should evaluate whether a party is entitled to documents which reflect "matters occurring before the grand jury." *Douglas Oil*, 441 U.S. at 223.[7] The Court

---

[7] Although the precise issue before the Court in *Douglas Oil* concerned the disclosure of *transcripts* of a grand jury proceeding, which are not requested by the instant Application, the

explained that "disclosure is appropriate only in those cases where the need for it outweighs the public interest in secrecy, and that the burden of demonstrating this balance rests upon the private party seeking disclosure." And, "as the considerations justifying secrecy become less relevant, a party asserting a need for grand jury [material] will have a lesser burden in showing justification." *Id.* The Supreme Court further noted that a court considering disclosure must "weigh carefully the competing interests in light of the relevant circumstances and the [legal] standards." *Id.* Moreover, "if disclosure is ordered, [a] court may include protective limitations on the use of the disclosed material." *Id.* Finally, the Supreme Court stated that, in evaluating whether disclosure is warranted, a district court enjoys substantial discretion. *Id.*[8]

---

Government submits that the same analysis should apply when evaluating whether to unseal documents that might contain information protected by Rule 6(e), including the identities of subjects or targets of the grand jury's investigation.

[8] The Fifth Circuit has also noted that the common law right of access to judicial records and documents can be overcome by a criminal defendant's "right to a fair trial before an impartial jury." *Belo Broad. Corp. v. Clark*, 654 F.2d 423, 431 (5th Cir. Unit A 1981). To the extent that such a right warranted the sealing of any of the documents at issue before the defendants' trial in this case, it no longer controls in light of the fact that this prosecution has long since concluded.

## ANALYSIS

A.    Docket Entry No. 440: Joint Sealed Motion[9]

As disclosed in various court filings, the document identified as the "Joint Sealed Motion" filed as Docket Entry No. 440 is the Defendants' Joint Motion to Dismiss, or for Alternative Relief, Based on Prosecutorial Misconduct.  Defendant Skilling filed a copy of this motion, together with the accompanying memorandum in support and proposed orders, in its entirety in unredacted form, with the United States Court of Appeals for the Fifth Circuit in support of his motion for bail pending appeal.  *See* Appendix of Exhibits filed by Appellant Jeffrey K. Skilling in Support of Motion for Bail Pending Appeal (Exhibits 34-35), *United States v. Jeffrey Skilling*, No. 06-20885 (5th Cir. Nov. 20, 2006).

The Government has notified counsel for the Applicant that Docket Entry No. 440 is publicly available and where it could located and that, in light the publicly-available nature of this material, the Government considered this request to be moot.

---

[9] The Application describes its request with respect to Docket Entry No. 440 as seeking access to the "Joint Motion to Dismiss, including all declarations and exhibits."  Docket Entry No. 440 contains *only* the sealed Joint Motion to Dismiss, or for Alternative Relief, Based on Prosecutorial Misconduct as well as the accompanying memorandum in support and proposed orders.  Each of the declarations and exhibits in support of the motion were separately filed on the docket as Docket Entry Nos. 444-454.  The Government construes the Application as requesting access to each of these supporting documents.  Because the analysis as to whether unsealing is appropriate differs slightly with respect to each of these documents, for the Court's convenience, the Government separately discusses each document below.

Counsel for the Applicant has authorized the Government to represent to this Court that the Applicant withdraws her request for access to Docket Entry No. 440.

1.   Docket Entry No. 441: Sealed Document

This document was filed contemporaneously with the Defendants' Joint Motion to Dismiss.  Although the Government sought access to this document in connection with its evaluation of the Application, *see* Dkt. 1356, this Court denied that request, *see* Dkt. 1361.  Accordingly, the Government takes no position on whether the Applicant should be granted access to this document, and defers to the Court's review and conclusion as to whether disclosure is appropriate.

2.   Docket Entry No. 444: Sealed Document

As disclosed in various court filings, the document identified as the "Sealed Document" filed as Docket Entry No. 444 is the declaration of defense expert witness Michael Tigar.  Consistent with the position it took earlier in these proceedings, the Government is of the opinion that this declaration should be unsealed.  Should the Court have access to the redacted version of this document previously provided by the Government to the Court, the Government does not object to the public filing of that version.  In the event that the Court no longer has access to that previously-provided version, the Government has reviewed this declaration and has concluded that the matters discussed therein are part of the public record in this case and there does not appear to be a need to redact any information

20

from this filing.  Accordingly, the Government does not object to the unsealing of Docket Entry No. 444.

      3.      <u>Docket Entry No. 445: Sealed Document</u>

Consistent with the position it took earlier in these proceedings, the Government is of the opinion that the declaration filed as Docket Entry No. 445 should be unsealed.  Should the Court have access to the redacted version of this document previously provided by the Government to the Court, the Government does not object to the public filing of that version.  In the event that the Court no longer has access to that previously-provided version, the Government has reviewed this declaration and has concluded that the matters discussed therein are part of the public record in this case and there does not appear to be a need to redact any information from this filing.  Accordingly, the Government does not object to the unsealing of Docket Entry No. 445.

      4.      <u>Docket Entry No. 446: Sealed Document</u>

Consistent with the position it took earlier in these proceedings, the Government is of the opinion that the declaration filed as Docket Entry No. 446 should be unsealed.  Should the Court have access to the redacted version of this document previously provided by the Government to the Court, the Government does not object to the public filing of that version.  In the event that the Court no longer has access to that previously-provided version, the Government has reviewed

this declaration and has concluded that the matters discussed therein are part of the public record in this case and there does not appear to be a need to redact any information from this filing.  Accordingly, the Government does not object to the unsealing of Docket Entry No. 446.

5.     Docket Entry No. 447: Sealed Document

Consistent with the position it took earlier in these proceedings, the Government is of the opinion that the declaration filed as Docket Entry No. 447 should be unsealed **with limited redactions**.  Should the Court have access to the redacted version of this document previously provided by the Government to the Court, the Government does not object to the public filing of that version.  In the event that the Court no longer has access to that previously-provided version, the Government has reviewed this declaration and has concluded that there are limited references in the document to information protected by Rule 6(e).  Accordingly, should the Court agree that this document may be unsealed, the Government requests that it be given the opportunity to provide the Court with a redacted version of this document "to omit details within the scope of Rule 6(e)(2)."  *In re Krynicki*, 983 F.2d 74, 76 (7th Cir. 1992).

6.     Docket Entry No. 448: Sealed Document

Consistent with the position it took earlier in these proceedings, the Government is of the opinion that the declaration filed as Docket Entry No. 448

should be unsealed.  Should the Court have access to the redacted version of this document previously provided by the Government to the Court, the Government does not object to the public filing of that version.  In the event that the Court no longer has access to that previously-provided version, the Government has reviewed this declaration and has concluded that the matters discussed therein are part of the public record in this case and there does not appear to be a need to redact any information from this filing.  Accordingly, the Government does not object to the unsealing of Docket Entry No. 448.

7. <u>Docket Entry No. 449: Sealed Document</u>

Consistent with the position it took earlier in these proceedings, the Government is of the opinion that the declaration filed as Docket Entry No. 449 should be unsealed **with limited redactions**.  Should the Court have access to the redacted version of this document previously provided by the Government to the Court, the Government does not object to the public filing of that version.  In the event that the Court no longer has access to that previously-provided version, the Government has reviewed this declaration and has concluded that there are limited references in the document to information protected by Rule 6(e).  Accordingly, should the Court agree that this document may be unsealed, the Government requests that it be given the opportunity to provide the Court with a redacted version of this

document "to omit details within the scope of Rule 6(e)(2)." *In re Krynicki*, 983 F.2d at 76.

### 8.   Docket Entry Nos. 450 and 451: Sealed Documents

Consistent with the position it took earlier in these proceedings, the Government is of the opinion that the declaration filed as Docket Entry No. 450, and the supporting exhibits to the declaration filed as Docket Entry No. 451, should be unsealed **with limited redactions**.  Should the Court have access to the redacted version of the declaration previously provided by the Government to the Court, the Government does not object to the public filing of that version.  In the event that the Court no longer has access to that previously-provided version, the Government has reviewed this declaration and has concluded that there are limited references in the document to information protected by Rule 6(e).  In addition, although several of the exhibits to the declaration appear to be publicly available, the Government would like the opportunity to make limited redactions where necessary.  Accordingly, should the Court agree that these documents may be unsealed, the Government requests that it be given the opportunity to provide the Court with redacted versions of both the declaration filed as Docket Entry No. 450, as well as the supporting exhibits to the declaration filed as Docket Entry No. 451, "to omit details within the scope of Rule 6(e)(2)." *In re Krynicki*, 983 F.2d at 76.

9.     Docket Entry Nos. 452, 453, & 454: Sealed Documents

Similar to the position it took earlier in these proceedings with respect to the *declarations* filed in support of the Joint Motion to Dismiss, the Government is of the opinion that the supporting *exhibits* to Joint Motion to Dismiss, filed as Docket Entry Nos. 452, 453, and 454, should be unsealed **with limited redactions**. The Government has reviewed these exhibits and had concluded that, although the vast majority of the exhibits appear to be publicly filed or otherwise reflect information in the public domain, the Government would like the opportunity to make limited redactions where necessary. Accordingly, should the Court agree that these documents may be unsealed, the Government requests it be given the opportunity to provide the Court with redacted versions of Docket Entry Nos. 452, 453, and 454, "to omit details within the scope of Rule 6(e)(2)." *In re Krynicki*, 983 F.2d at 76.

B.     Docket Entry No. 456: Redacted Joint Motion to Dismiss and Memorandum in Support

The Application seeks access to an unredacted copy of the Motion to Dismiss that was filed in redacted form as Docket Entry No. 456. As explained above, Defendant Skilling filed both the Motion to Dismiss and the memorandum in support in their entirety in unredacted form, with the Fifth Circuit in connection with his appeal. Because this document is publicly available, counsel for the Applicant has authorized the Government to represent to this Court that the Applicant withdraws her request for access to Docket Entry No. 456.

25

C.   Docket Entry No. 457: Redacted Declaration of Michael E. Tigar in Support of Defendants' Joint Motion to Dismiss

The Application seeks access to an unredacted copy of the Declaration of Michael E. Tigar that was filed in redacted form as Docket Entry No. 457. As explained above, the Government has reviewed the unredacted version of the Tigar Declaration, filed as Docket Entry No. 444, and has concluded that the matters discussed therein are part of the public record in this case. Accordingly, the Government does not object to the unsealing of Docket Entry No. 444. Should the Court agree that the unredacted version of the Tigar Declaration can be unsealed, that decision would make this request moot.

D.   Docket Entry No. 458: Sealed Document

The Government neither filed this document nor requested that this document be filed under seal. The Government has reviewed this document and has no objection to its unsealing at this time given that this prosecution has concluded. The Government notes that although the document does refer to certain individuals related to the Enron investigation, it does not believe that any information contained in the filing is protected by Rule 6(e). In addition, several of the individuals listed therein pleaded guilty in related proceedings and others are publicly identified elsewhere in the various pleadings filed with this Court and Fifth Circuit. Accordingly, the Government does not object to the unsealing of Docket Entry No. 458.

E.     Docket Entry 491: Sealed Document

As disclosed in various court filings, the document identified as the "Sealed Document" filed as Docket Entry No. 491 is the Government's Opposition to the Joint Motion to Dismiss Based on Prosecutorial Misconduct.  At the time the Government filed this Opposition in unredacted form under seal, it also filed a redacted version on the public docket. *See* Dkt. 493.  The Government has reviewed the Opposition in its entirety and, in view of the fact that much of the Opposition is already publicly available in redacted form, and that the portions of the Opposition that were previously redacted have been extensively discussed in various pleadings filed with this Court and Fifth Circuit, the Government does not object to unsealing the Government's Opposition contained within Docket Entry No. 491.

Because the Government does not believe any information contained in its Opposition Brief is protected by Rule 6(e), it consents to the immediate unsealing of pages 1 through 40 of Docket Entry No. 491.  However, for the reasons discussed below, the Government requests that the Court **not** immediately unseal the remainder of Docket Entry No. 491 (specifically, those documents filed as Docket Entry Nos. 491-1, 491-2, 491-3, and 491-4) until the Government: (a) has an opportunity to make limited redactions from certain declarations and exhibits to avoid the disclosure information protected by Rule 6(e), and (b) can obtain the position of the authors of the declarations filed as exhibits to the Government's

Opposition as to whether they have any objection to the unsealing of those declarations.

      1.     <u>Docket Entry Nos. 491-1, 491-2, 491-3, and 491-4: Exhibits to Sealed Document</u>

The Application describes its request with respect to Docket Entry No. 491 as seeking access to the "Government's Opposition, including all declarations and exhibits." As noted above, contemporaneous with the filing of its Opposition, the Government submitted declarations or letters from several individuals alleged to have been targets of government interference as well as a number of exhibits in support of its motion. These documents were filed as Docket Entry Nos. 491-1, 491-2, 491-3, and 491-4.

With respect to the declarations and letters, the Government has reviewed these documents and has concluded that there are limited references to information protected by Rule 6(e). Accordingly, should the Court agree that these declarations and letters may be unsealed, the Government requests that it be given the opportunity to provide the Court with a redacted version of these documents "to omit details within the scope of Rule 6(e)(2)." *In re Krynicki*, 983 F.2d at 76. Moreover, it appears as though at least some of the authors of these declarations and letters provided them to the Government with the understanding that they would be filed under seal. Although the Government recognizes that the position of the authors of these documents is not dispositive for purposes of the Court's analysis as to whether

28

unsealing is warranted, the Government respectfully requests the opportunity to seek the position of the authors out of an abundance of caution. The Government has already been in contact with several of these individuals, but is still awaiting responses from others. Accordingly, should the Court agree that these declarations and letters may be unsealed, contemporaneous with the provision of the redacted versions of these documents, the Government will inform the Court if any authors object to the unsealing of their declarations or letters.

With respect to the exhibits filed in support of its motion, the Government has reviewed these exhibits and had concluded that, although the vast majority of the exhibits appear to be publicly filed or otherwise reflect information in the public domain, the Government would like the opportunity to make limited redactions where necessary to avoid the disclosure information protected by Rule 6(e). Accordingly, should the Court agree that these exhibits may be unsealed, the Government requests that it be given the opportunity to provide the Court with a redacted version of these documents "to omit details within the scope of Rule 6(e)(2)." *In re Krynicki*, 983 F.2d at 76.

F.    Docket Entry No. 493: Redacted Government's Opposition

The Application seeks access to an unredacted copy of the Government's Opposition to the Joint Motion to Dismiss Based on Prosecutorial Misconduct that was filed in redacted form as Docket Entry No. 493. As explained above, the

Government does not object to the unsealing of Docket Entry No. 491 which is the unredacted version of the Government's Opposition.  Should the Court agree that the unredacted version of this document can be unsealed, that decision would make this request moot.

G.      Docket Entry 504: Sealed Document

As disclosed in various court filings, the document identified as the "Sealed Document" filed as Docket Entry No. 504 is the Reply Memorandum in Support of the Defendants' Joint Motion to Dismiss, or for Alternative Relief, Based on Prosecutorial Misconduct.  Defendant Skilling filed a copy of this brief, in its entirety in unredacted form, with the United States Court of Appeals for the Fifth Circuit in support of his motion for bail pending appeal.  *See* Appendix of Exhibits filed by Appellant Jeffrey K. Skilling in Support of Motion for Bail Pending Appeal (Exhibits 34-35), *United States v. Jeffrey Skilling*, No. 06-20885 (5th Cir. Nov. 20, 2006).

The Government has notified counsel for the Applicant that reply brief contained within Docket Entry No. 504 is publicly available and where it could located and that, in light the publicly-available nature of this material, the Government considered the portion of the request seeking the reply brief to be moot. Counsel for the Applicant has authorized the Government to represent to this Court

that the Applicant withdraws her request for access to the reply brief contained within Docket Entry No. 504.

1.     Docket Entry No. 504: Exhibits to Sealed Document

The Application describes its request with respect to Docket Entry No. 504 as seeking access to the "Defendant's Reply Memorandum, including all additional exhibits and supplemental declarations." Those supporting exhibits and declarations were filed as part of Docket Entry No. 504.  Similar to the position it is taking with respect to the declarations and exhibits filed in support of the Joint Motion to Dismiss, the Government is of the opinion that the declarations and exhibits filed along with the Reply Memorandum, should be unsealed **with limited redactions**. The Government has reviewed these documents and has concluded that, although these documents appear to be publicly filed or otherwise reflect information in the public domain, the Government would like the opportunity to make limited redactions where necessary.  Accordingly, should the Court agree that these documents may be unsealed, the Government requests it be given the opportunity to provide the Court with redacted versions of the declarations and exhibits filed as part of Docket Entry No. 504 "to omit details within the scope of Rule 6(e)(2)."  *In re Krynicki*, 983 F.2d at 76.

H.    Docket Entry No. 561: Transcript of December 1, 2005 Evidentiary Hearing

Defendant Skilling included a copy of this transcript as part of his record excerpts filed with the Fifth Circuit contemporaneously with his opening brief. *See* Record Excerpts filed by Appellant Jeffrey K Skilling, *United States v. Jeffrey Skilling*, No. 06-20885 (5th Cir. Sept. 17, 2007).

The Government has notified counsel for the Applicant that Docket Entry No. 561 is publicly available and where it could located and that, in light the publicly-available nature of this material, the Government considered this request to be moot. Counsel for the Applicant has authorized the Government to represent to this Court that the Applicant withdraws her request for access to Docket Entry No. 561.

## CONCLUSION

As explained above, with respect to those documents that have been publicly filed by Defendant Skilling in connection with his Fifth Circuit appeal, the Applicant has agreed to withdraw her request for access to these materials. As to the remaining documents requested by the Applicant, the Government has reviewed the sealed filings and, in light of the fact that the issues discussed therein have been made a part of the public record in this and related proceedings, the Government agrees that these additional materials can be unsealed in this case, subject to limited redactions in order to protect material covered by Rule 6(e). To the extent that the Court no longer has access to the copies of these documents that the Government previously

submitted with proposed redactions, Government requests the opportunity to provide the Court with new versions of these documents with limited redactions.  To the extent that the Court agrees with the above analysis, the Government is submitting along with this response a proposed order for the Court's consideration.

Respectfully submitted,

ROBERT ZINK
ACTING CHIEF, FRAUD SECTION
Criminal Division
United States Department of Justice

*s/  Jeremy R. Sanders*
JEREMY R. SANDERS
TRIAL ATTORNEY
Fraud Section, Criminal Division
U.S. Department of Justice
1400 New York Avenue, N.W.
Washington, D.C.  20005
Tel:    (202) 616-2650
jeremy.sanders@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that, on February 5, 2019, I electronically filed the foregoing

motion with the Clerk of the Court using the ECF/CM system for filing and service

on all counsel of record.  I further certify that, on February 5, 2019, I caused a copy

of the foregoing motion to be sent via Federal Express to Kevin Fulton, counsel for

Application Margot Cleveland, at the address below:

    Kevin Fulton
    The Fulton Law Group PLLC
    7676 Hillmont St. Suite 191
    Houston, Texas 77040


    *s/  Jeremy R. Sanders*
    Jeremy R. Sanders
    Trial Attorney
    Fraud Section, Criminal Division
    U.S. Department of Justice